## GEORGE RAYMOND GARDNER v. THE STATE.

No. 23860.  Delivered January 7, 1948.
Rehearing Denied March 17, 1948.

*John D. Bradshaw, H. C. Davidson,* and *King C. Haynie,* all of Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. B. Duggan* and *E. T. Branch,* Assistant Criminal District Attorneys, all of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted for the murder of Arval Johnson and assessed the death penalty.

The pertinent facts of the case are brief. Appellant had been in the armed service during which time he learned that Arval Johnson, who remained at home, was paying attention to one Dorothy Worthy, a young woman with whom appellant had associated to some extent before the war and with whom he had been in constant association after his return until about the time of the homicide on January 20, 1947. The woman was employed in a grocery store and beer place belonging to a Mr. Christian. It was her business to come to the place early in the morning, usually around six, to clean it up and put it in readiness for operation during the day. She would then return to her room and dress and report for regular duty about 8:30 or 9 o'clock. Appellant customarily met her, either at her rooming place or the place of business, at the early hour and would help her in the work of cleaning up. For a short time prior to the homicide, however, it appears that the deceased had been giving this assistance, contrary to appellant's plans. On the Sunday afternoon prior to the homicide both deceased and appellant were in the place of business and the former left with Dorothy at about five o'clock in the afternoon. Appellant remained at the store until closing time, around eight, and left with the proprietor and others as he closed.

According to appellant's testimony he picked up a pistol back of the bar, which belonged to the proprietor, and placed it in his pocket. This he did without permission of its owner. The State has introduced evidence indicating that appellant went to the back door after the proprietor had fastened it from the inside, and released the door and probably entered sometime during the night for the purpose of securing the pistol. To the evidence so indicating appellant objected and brings forward the only bill of exception in the case and contends that such evidence is error, in that it is inflammatory and prejudicial and is evidence of an extraneous crime. The complaint will not call for an extended discussion. It is a part of the circumstances of the transaction whether he secured the gun his way or in the manner which the State's evidence would indicate. All circumstances of the transaction may go to the jury if, by a fair consideration, they afford any light on any matters at issue. Branch's Ann. P. C. page 62, Sec. 97.

The facts further reveal that early the next morning, which was Monday, Dorothy Worthy came to the store at the usual

time for the purpose of cleaning the place up. Arval Johnson, the deceased, came with her and was assisting her when appellant appeared on the scene. There is much conflict between the testimony of Dorothy and appellant as to what took place. It is certain, however, that he entered the place of business from the rear and presented the pistol which he says that he had taken home with him and expected to return that morning. He had a bottle of whisky and presented it for the purpose of giving a drink to Johnson and Dorothy Worthy. She testified that he lined them up at the point of the pistol and informed them that they were all three to take a drink before he killed them both, as well as himself. She pretended to be sick and begged him to let her go into the rest room. While in there she slipped off her shoes and ran out the back door in her bare feet and sought a hiding place at a nearby gas station. No one was present when Johnson was killed except appellant.

Appellant testifies quite differently as to the matter of drinking and her reason for going into the rest room, but does not deny that she took off her shoes and fled. He says that he had made Johnson sit down in one of two chairs near the end of the bar; that he did so in order that he might have a proper view and time to act if Johnson attempted to draw a weapon. He then said that Johnson made a motion as if to secure a weapon and lunged toward him, at which time he fired three shots. He is positive about the number. Two bullets struck Johnson, either one of which would probably have proven fatal. They were copper tipped bullets. A third bullet was found, after the shooting, just over the back door through which Dorothy Worthy fled. This was a soft nosed bullet but of the same size as the two which entered Johnson's body. It was the State's theory that this shot was fired at Dorothy but appellant denied this and said that Johnson was in a line between his pistol and the back door at the time he shot, making it probable that the bullet found above the door was one from his gun at the time he fired three shots. The officers found two shells on the floor. A day or two later Christian found the third one. All three bullets were introduced into evidence and brought with the record to this court.

During the trial some question arose as to whether or not the soft nosed bullet came from the pistol used in killing Johnson. Appellant asked for time to have the bullets examined by an expert to determine that fact. The court declined to give the time for that purpose and proceeded with the trial.

Appellant was arrested soon after the shooting and placed in jail. He testified in his own behalf but the foregoing statement, together with his denial that he intended to or threatened to kill Johnson and Dorothy, and the further declaration that he shot Johnson because he was making a pass at him and he did so in self defense, will constitute the important part of his testimony. His telephone conversations together with some other facts and circumstances are found in the record, but are not considered of sufficient importance to require discussion.

On a motion for new trial it was strenuously urged that a new trial should be granted because of newly discovered evidence. A ballistic expert had been consulted and would testify positively that the soft nosed bullet was not shot out of the same gun as the two copper tipped bullets. It was thought that this would disprove the State's theory that he was shooting at Dorothy and would, thereby, remove some of the inflammation which the entire record placed in the minds of the jury. Whether the evidence should be classified as newly discovered so as to demand a new trial does not, in the opinion of the writer, appear of any great importance in view of the fact that appellant himself had testified positively that he fired three times, and that the bullet found above the door was in line with the shots which he fired. It will be presumed that the trial judge was of the opinion that the new evidence would not result in a different conclusion on the subject by the jury.

The third complaint presented by the appeal relates to the evidence embraced in the one bill of exception, which indicates that the appellant broke into the store, secured the pistol during the night, and left the door open so that he may enter the next morning while deceased and Dorothy Worthy were at work without giving them warning of his approach. The objection thus treated is based on the proposition that his breaking into the store was evidence of an extraneous offense. If it be such then there would be a question as to its admissibility. However, it appears perfectly clear that under the State's theory, if he did so, it was a part of his plan and design to murder the two people. On that theory it would be admissible, as heretofore stated. Furthermore, we are unable to see any material difference in the manner of its taking as detailed by appellant himself. If one be burglary the other would, for the same reason, be theft.

A fourth complaint is based on the refusal of the court to grant a new trial because of further newly discovered evidence

pertaining to the issue of insanity. It was urged, in said motion, that a number of people of his acquantance would testify as to his insane state, and that such facts were not known to appellant's attorney at the time of the trial. The record contains evidence of a large number of people who had known him and, apparently, were in position to testify on the subject. They were called to testify as to his good reputation. Had there been any suspicion in the mind of the attorney as to his mental condition, it would have been his duty then to have inquired of these people who knew well his reputation and to have developed the evidence on the main trial. It would be a little unusual to consider this evidence newly discovered in the face of the rules requiring diligence, as plainly discussed in many decisions of this Court.

Another and further ground presented in the brief, to show error in refusing to grant a new trial, discusses what is presented as newly discovered evidence of numerous occasions in which the deceased had beat the State's witness Dorothy Worthy. This is presented as contradictory evidence to the testimony given by the said Dorothy Worthy at the time of the trial. Such evidence is not considered important to the issues in the case that were gone into to some extent on the trial and, at most, would only be impeaching testimony. The holdings of this Court on the subject are too numerous and too clear to require citation of authorities or further discussion.

The appellant was ably represented in the trial of his case by capable attorneys who have filed in this cause an exhaustive brief on the issues presented. We acknowledge the helpfulness of such a brief in the consideration of the several questions. It also appears that the case has been fairly tried and that every right was accorded to the appellant in the court's charge. He was given the benefit of a charge on self defense, the necessity for which is doubtful. The jury was justified, under the evidence, in reaching the conclusion which they did and in fixing the extreme penalty. We find no reversible error and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

In his motion for a rehearing appellant directs our attention to some errors in the statement of the facts set forth in the original opinion wherein we said, "Appellant had been in the armed services during which time he learned that Arval Johnson, who

remained at home, was paying attention to one, Dorothy Worthy, a young woman with whom appellant had associated to some extent before the war." Upon a more careful review of the record, we find that appellant was discharged from the army on the 16th day of December, 1946; that at the time of the unfortuate occurrence he had known Dorothy Worthy only about 8 or 9 months and therefore could not have associated with her before the war. However, we do not see that the length of time he had associated with her is material since that had nothing to do with the unfortunate occurrence. We, therefore, cheerfully make this correction with the purpose that the opinion may reflect the true facts.

Our attention is also directed to another immaterial error in our former opinion wherein we said, "For a short time prior to the homicide, however, it appears that the deceased had given this assistance, contrary to the appellant's plans", (referring to the assistance given to Dorothy Worthy by appellant in cleaning up the place of business where she was employed). According to the record, the deceased had helped her on only a few occasions.

In the amended motion for a new trial, it is shown, among other things, by proffered testimony that appellant offered two ballistic experts at such hearing who testified on the hearing of such motion that they had examined under powerful microscopes the two copper-jacketed bullets as well as the leaden bullets found above the door of the bar, and that the markings on the copper-jacketed bullets were clockwise, while the markings on the leaden bullet were counter-clockwise, and that the leaden bullet could not have been fired from the same pistol that the copper-jacketed bullets were fired from.

The testimony of the State's witness, Dorothy Worthy, shows that on the morning of the tragedy, she and the deceased were in the building operated by Mr. Christian; that appellant approached them with a pistol in his hand, and "he told us both to come down to the end of the bar and stand there; that he was going to kill us. * * * He was holding the gun on us in his left hand, and he never did take it off." Then appellant took a bottle of whisky out of his pocket and said, "Let's have a drink. * * * Before we die we are taking one more drink." Deceased offered to shake hands with appellant and forget their differences, whereupon appellant said, "I am not listening to any of that. Nothing you say will do any good. I am going to kill all three of us." Appellant was about eight feet from the deceased at

that time. Miss Worthy claimed to be sick and asked to be allowed to go into the ladies' rest room, which appellant permitted her to do. While therein she removed her shoes. She came out and ran towards the back door when she heard a gun fire. She then heard two more shots. When the second shot was fired, she heard the deceased scream like one in pain or anguish, and then she heard the third shot fired. She ran into a filling station and hid herself. She further testified:

"I first noticed that bullet hole over that back door after we came back from the police station. * * * The back door is located so that if he shot at me while I was running the bullet could have hit right over that back door there."

Appellant admitted that he talked to Mrs. N. J. Story (with whom Dorothy Worthy lived) after the shooting, but denied her testimony in which she said that on the morning of the killing she talked with him over the telephone and that he asked her if Dorothy was there; that upon her stating that she was not sure, appellant said, "Well, I just shot Johnson, and made sure that he was dead before I left him, and would have gotten Dorothy also had she not run from the building." Mrs. Story then said, "Dorothy is not here. * * * Where are you?" He replied, "That's none of your business," and hung up.

It is shown that soon after the shooting, an officer and Mr. Christian (the proprietor of the bar where the shooting took place) came upon appellant as he was walking upon the street; that they stopped the car in which they were riding; that Mr. Christian called appellant and started towards him; that appellant told them not to come any closer or he would shoot them, whereupon the officer told appellant who he was; that appellant answered that he did not care, and then said that he would give his pistol to Mr. Christian, which he did. The pistol was a .380 automatic. It had one cartridge left in the clip thereof. These men then went back to the bar where the shooting took place and discovered a bullet hole over the back door of the back room leading to the outside. The hole was about six or seven inches above the facing of the door. It was a fresh place, and there had been no bullet scar above that door before that day. The officers on that day found two empty .380 hulls there; and on the day after the killing Mr. Christian found a third .380 hull under a lattice behind the bar of his place, about five or six feet from where the body lay. All three hulls and the three bullets were introduced in evidence upon the trial.

The homicide occurred early in the morning of January 20,

1947, and on the following day (January 21st), appellant employed two attorneys who filed an application for a writ of habeas corpus, which was granted and bail refused on January 25, 1947. All three bullets were present and introduced at such trial. However, only two hulls were introduced at that time. The indictment herein was returned on January 24, 1947.

It is unquestioned that appellant fired three shots. This is attested to by witnesses who heard the shots, and also by appellant who testified.

"I fired three shots to the best of my knowledge. I do not know what shot it was when he cried out in pain. He hollored when I shot him, or screamed. I fired three shots altogether, to the best of my knowledge. He didn't say anything when he screamed."

When the deceased was shot, he had nothing in his hand, and no weapon was found on his body. Two bullets entered his body, he being about eight feet away from appellant when shot. Appellant further testified:

"I do not know what became of the other bullet. I was pointing the gun at him. He did not fall when the first shot hit him. When one shot hit him he screamed; he hollered a little. I shot three times all at once."

This cause was tried on March 14, 1947, and on April 9, 1947, a motion was filed by appellant's attorneys requesting, among other things, to be allowed to have these bullets examined by a ballistic expert, such motion being supported by affidavits of appellant's attorneys. One of the affidavits of such attorneys stated that immediately after the argument herein had been concluded and while the jury was deliberating, the attorney took these three bullets to a window where the light was good, and with a small magnifying glass, he discovered that one of the bullets had come out of a gun with counter-clockwise markings, while the other two bullets evidenced clockwise markings, thus showing that the leaden bullet found over the door came from a different gun than did the two bullets found in the body of the deceased. It will be noted that it took this attorney only a few moments to find these different markings on these bullets, although the bullets had been present in both hearings hereof.

In our original opinion, we were mistaken relative to the time of the filing of the motion to be allowed to have a ballistic expert examine these three bullets. This motion was not filed

during the trial hereof but was filed on April 9th, 1947, which was 25 days after the completion of the trial on March 14, 1947.

The affidavit in question of one of appellant's attorneys shows, among other things, the following:

"After the conclusion of the argument, and immediately after the jury had retired, I obtained said bullet from the court reporter and went to a window where the light was better than in the middle of the courtroom, and examined said bullet through a small magnifying *class,* at which time I discovered that the grooves made by the rifling in the barrel of the pistol from which the bullets with the copper jackets were fired were clockwise, and that they appeared to be counter-clockwise on the said lead bullet, which would show as a physical fact that said lead bullet could not have been fired from said pistol, which had clockwise rifling in the barrel."

There is no question but what the proof shows that three shots were fired by appellant, all three in the general direction of the door through which Dorothy Worthy fled, two of the bullets finding lodgment in the body of deceased and the third one evidently missing him. It also seems fairly evident that the second shot was the first bullet to strike the deceased because he screamed at the second shot. We think the position of the leaden bullet could have had no material bearing on this case. Evidently the third bullet went somewhere, and its final resting place was but an immaterial matter, all of them, however, being fired in the direction in which Dorothy Worthy fled. It seems fairly inferable from the testimony of Dorothy Worthy that appellant intended the bullet for her, and from Mrs. Story's testimony that it was intended for Miss Worthy and that he would have gotten her had she not fled. We think it was an immaterial matter as to who fired the instant leaden bullet, appellant having admitted that he fired a third bullet which did not strike the deceased, and the testimony showing conclusively that a third bullet was fired; whether the leaden bullet was the third or first shot being an immaterial matter, a third one was fired as shown by the testimony.

Again, we think the appellant's attorneys evidenced a lack of diligence in examining these three bullets, all present at the habeas corpus trial and also during this trial; and while the jury was deliberating on the verdict, the attorneys ascertained by a short inspection thereof that the leaden bullet could not have come from the same pistol as did the copper-jacketed bullets found in the dead body and that they did not call this to

the trial court's attention until 25 days thereafter. Had they done so at the time of this discovery by appellant's attorney, the jury could have been recalled and the matter of the bullets gone into. We also think that this conduct evidences a lack of diligence upon their part as found by the careful trial court in his order overruling appellant's motion for a new trial, which reads in part as follows:

"The Court finds from the evidence there was insufficient diligence used to procure what is called 'newly discovered evidence', and that there was no newly discovered evidence which would have probably changed the result, and that the affidavits as to defendant's mental condition are but expressions of opinion based solely on friendship, and there was no suggestion or hint of insanity until said amended motion for new trial was filed, and would not change the result."

In view of the undisputed testimony that appellant fired three shots in the general direction of the door through which Miss Worthy fled supports the trial court's finding that the newly discovered evidence would not probably change the result; and his finding that there was insufficient diligence in discovering the newly discovered evidence appears justified under the record.

Furthermore, we think the claimed newly discovered testimony as to the insanity of appellant evidences a lack of diligence to discover same and its probable lack of truth.

We think the trial court was correct in overruling the motion for a new trial, and the motion for a rehearing will be overruled.